THOMAS P. SHEPHARD *vs.* JOSEPH BUTTERFIELD & another.

If an officer enters a building, in which property is stored, and makes a public declaration that all the property therein is attached, and locks up the building, and gives the key to a clerk of the owner, with directions, assented to by the clerk, to keep the property for the officer, these facts constitute a valid attachment of the property in the building.

Where property in a building was attached, and the officer, afterwards, without intending to abandon the attachment, took all the care and custody of the articles, which, from their bulky nature and small value, could reasonably be required, notwithstanding which, the debtor obtained access to the building, and mortgaged the property to a creditor, who, before recording his mortgage, had knowledge of the attachment; it was held, that there was no abandonment of the attachment which the mortgagee could take advantage of.

If bulky articles of property are attached in an open shed, and left there by the officer, without any further actual charge of the same, or notice of the attachment posted up, by him, the attachment is lost, even as against a party having notice.

THIS was an action of trover, tried before *Wells*, C. J., in the court of common pleas, for the conversion of thirty carboys, and a quantity of muriatic acid, soda-cake, salt and coal.

The title of the plaintiff to the carboys was admitted; they having become connected with the other property in the manner hereinafter stated. Both parties claimed title to the residue of the property under one Joseph B. Cummings; the defendants under an attachment dated October 30th, 1847, and a sale on execution of the same property on the 11th of January, 1848; and the plaintiff under a mortgage dated November 1st, and recorded November 2d, 1847; and a demand made upon the officer on the 11th of January, 1848.

There being evidence in the case, tending to show a conversion of different portions of the goods on different days, the plaintiff was required by the court, on the motion of the defendants, to elect which particular act of conversion he would proceed upon; and he thereupon elected the seizure and sale of the goods, on the 11th of January, 1848, as hereinafter stated. This order of the judge was excepted to, but the objection was waived on the argument in this court.

The evidence introduced tended to prove the following state of facts: —

36 *

The said Cummings was engaged in the manufacture of muriatic and other acids. One Thomas A. Covil was in his employ, and acted as his agent, and boarded with him, but did not at that time lodge in his house, though he had recently lodged there, and had not removed his clothes. On Saturday, the 30th of October, 1847, the defendant Hildreth sued out a writ against Cummings, and gave it to the other defendant, Butterfield, who was a deputy sheriff, for service. Butterfield went accordingly to the works of Cummings, who was absent, and into the building or manufactory where all the property except the soda-cake was stored; and declared all the property attached, and gave charge of it to Covil, with directions to lock it up, and to keep it for him. The soda-cake, which was a coarse, bulky article, the residuum of the acid manufacture, was in an open shed, about thirty feet from the manufactory, occupied by Cummings for storage.

The said Covil, in pursuance of Butterfield's directions, locked up the building, and put the key into a desk in Cummings's house, where the books of the concern were kept. He then notified Cummings's wife of the attachment, and left the house for the night. The next day he went to the store, and found Cummings there; he having obtained admission by means of the key left as before stated. Covil then notified Cummings of the fact of the attachment made the day before. This was on Sunday; the attachment having been made on Saturday. Cummings was in the building again on Monday, and also on Tuesday, about an hour before the mortgage was recorded. He, then, in the absence of Covil, took away a part of the property, among which was a large number of carboys similar to those sued for in this action, which Butterfield claimed to have attached on the Saturday previous.

Butterfield came to the place where the goods attached were on Tuesday morning, and, at a time prior to the recording of the mortgage, put another person in possession of the remaining property, with a written authority to keep the property for him. This keeper was on the ground, and had

possession of the key, and control of the building where the acids were stored, for two or three weeks, when he gave up the key to Butterfield, who retained the same until the time of the sale on the execution, as hereinafter stated. It did not appear that Butterfield, after he took the key, visited the building where the acids were stored, or took any actual charge of the soda-cake, which remained deposited in the open shed ; or that he posted up any written notice that the same was attached.

On the 10th of January, 1848, after the property was advertised for sale on the execution of Hildreth, and the day before the sale, Cummings, by the direction of the plaintiff, took the thirty carboys, which are sued for in this action, to the building where the acids were stored, and filled twenty-two of them with the acids. These carboys were the property of the plaintiff. Cummings obtained entrance into the building through the back door, which, by some means not disclosed by the evidence, had been unfastened. He then proceeded to carry away the acids in the carboys, and also other property specified in the attachment and mortgage.

The said Butterfield, hearing of these proceedings, went to the building, stopped Cummings from the further removal of the property, and retook what he had removed, including the carboys so filled with acid. Cummings notified Butterfield that the carboys belonged to the plaintiff, and offered to take away the eight carboys remaining empty. Butterfield refused to give him leave, saying that he claimed every thing that was there or was brought there.

On the 11th of January, 1848, Butterfield sold at auction, on the execution, all the property except the carboys ; the acid which was sold remaining in the carboys, where it had been placed by Cummings, by the direction of the plaintiff. None of the property was removed on the day of sale. The next day, Hildreth, who was the purchaser of the acid and soda-cake, removed them, and removed the acid in the carboys, where it had been so placed by Cummings. No other demand for the carboys, or any conversion of the same, than as above stated, was proved.

When the second keeper surrendered the key to Butter-field, all the doors were fastened ; and there was no evidence, that Butterfield had any knowledge that any of the fastenings had been removed ; but it was in evidence, that for two or three weeks before the sale on execution, Cummings had repeatedly been in the building through the back door; and that on one occasion, Hildreth and an agent of Cummings had entered and taken away a small quantity of coal. There was evidence, that a person who was then agent of the plaintiff, who wrote the mortgage and took the same after it was executed to the clerk's office to be recorded, had notice of the attachment previous to taking the mortgage to the clerk's office.

The plaintiff contended, that there had never been any valid attachment of the soda-cake, or if any had been made, that it was invalidated or abandoned, by the omission of Butterfield to take and keep possession of the same.

On this point, the judge directed the jury to inquire whether Butterfield did take possession of the property, and whether the agent of the plaintiff had notice of its being attached, before the recording of his mortgage. The judge also directed them to find these facts specifically, and instructed them that if these facts were proved, and if they further found, that Butterfield took all the care and custody of the articles attached, which, from their bulky nature and small value, could be reasonably required, and had never intended to abandon the attachment, then there had been no legal abandonment of the attachment as against the plaintiff.

The jury returned a verdict for the defendants, and answered specifically, that they found, that Butterfield took possession of the soda-cake under his attachment, and that the agent of the plaintiff had notice of the attachment before the recording of the mortgage.

In regard to the carboys, the judge instructed the jury, that the plaintiff, having made his election, was confined to the transactions which took place on the 11th of January, 1848, and that this rendered it unnecessary to decide upon the effect of the refusal to deliver the eight carboys on the 10th

of January; that if the plaintiff had wrongfully put into his own carboys the acid held under attachment by the defendant Butterfield, the sale by Butterfield of the acid in the plaintiff's carboys was not an act of conversion for which he was legally responsible; nor was the bidding off of the acid by the defendant Hildreth, an act of conversion for which he was responsible; Butterfield not claiming to sell, nor Hildreth to buy, the carboys.

The court further instructed the jury, that the act of Butterfield, in refusing to give up the eight carboys on the 10th of January, was not the joint act of Butterfield and Hildreth; nor was the carrying away by Hildreth of the twenty-two carboys filled with acid on the 12th of January, the joint act of Hildreth and Butterfield.

The plaintiff contended, that there had been an abandonment in law of the attachment; but the court left it to the jury to determine, as a matter of fact, whether there had ever been an actual abandonment by Butterfield of the attachment.

The verdict being for the defendants, the plaintiff alleged exceptions.

*A. P. Bonney*, for the plaintiff, cited *Hollister* v. *Goodale*, 8 Conn. 332; *Bagley* v. *White*, 4 Pick. 395; *Sanderson* v. *Edwards*, 16 Pick. 144; *Carrington* v. *Smith*, 8 Pick. 419; *Heard* v. *Fairbanks*, 5 Met. 111; *Train* v. *Wellington*, 12 Mass. 495.

*J. G. Abbott*, for the defendants.

DEWEY, J. The lien by attachment of the muriatic acid, and of the other articles in the factory building, may well be sustained. These articles were duly attached, inasmuch as an entry into the building, and a public declaration by the officer that all the property therein was attached; the locking up of the building, in which the goods were; and the placing the key in the hands of an agent, with directions assented to by him to keep the property for the attaching officer; were, taken together, sufficient acts to constitute a valid attachment of the property thus found in the building.

The attachment as to these articles was not lost by any abandonment. The facts stated in the case are sufficient to

avoid such a result. We perceive no difficulty in sustaining the ruling of the court of common pleas, as to the lien of the attachment upon all the articles returned as attached, except the soda-cakes, as to which the facts are different in regard to the custody of the attaching officer. The inquiry is, then, whether the attachment of these articles was not lost or abandoned? The court below instructed the jury, that if these facts were found to exist, namely: 1st. Actual attachment by Butterfield; 2d. That the plaintiff had notice of such attachment before recording his mortgage; 3d. That Butterfield took all the care and custody of the articles, which, from their bulky nature and small value, could be reasonably required; and, 4th. That the officer never intended to abandon the attachment; then there had been no abandonment of the attachment, that could be set up by the plaintiff. No further question arises as to the carboys; as the court confined the plaintiff to one act of conversion, which, as it is now conceded, was proper.

The facts relating to the soda-cakes, as we understand them, are these: They were in an open shed, about thirty feet from the manufactory, in which the muriatic acid was kept, and which latter building was closed and under a lock and key. After the surrender of the key of the building, by the agent who had the same, to the officer, the officer took no actual charge of the soda-cakes, which remained deposited in the open shed, and while there the same was transferred by mortgage to the plaintiff.

If these facts shall be in evidence, on a new trial, it will be the duty of the presiding judge to instruct the jury, that the attachment was thereby abandoned and lost. To preserve an attachment of personal property, the officer must continue in possession of it, either by himself or a keeper; and mere notice that an attachment was made of the articles is not enough to prevent a second attachment of the same articles. *Gower* v. *Stevens*, 1 App. 93. The difficulty in such cases is this; that the party, though notified of the previous attachment, might also know that the attachment had been lost by the default or neglect of the attaching

officer   *Bayley* v. *White,* 4 Pick. 395.   The result is, that the exceptions are overruled, except as to the soda-cakes, in reference to which, upon the facts as stated, the attachment, if ever made, was lost; and to that extent the verdict must be set aside.